UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA SOLORZANO,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:24-cv-2754 AC<br><br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment GRANTED.

I.  PROCEDURAL BACKGROUND

Plaintiff applied for SSI on December 16, 2021, alleging disability as of September 10,

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

2021. AR 23.[2]  The application was disapproved initially on April 5, 2022, and after reconsideration on October 6, 2022. Id.  On September 13, 2023, ALJ Vincent Misenti presided over the hearing on plaintiff's challenge to the disapprovals. AR 47-67 (transcript). Plaintiff, who appeared with Terri Isaac as counsel, testified at the hearing. AR 47, 51.  Because the Vocational Expert ("VE") did not testify at the hearing, the ALJ submitted interrogatories on behalf of both himself and plaintiff.  AR 64-65.

On February 28, 2024, the ALJ found plaintiff "not disabled" as of the December 16, 2021 application date under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 23-37 (decision), 38-43 (exhibit list).  On September 19, 2024, after receiving Exhibit 12B, a Request for Review dated March 20, 2024, as an exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-6 (decision and additional exhibit list).

Plaintiff filed this action on October 7, 2024.  ECF No. 1; see 42 U.S.C. § 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 4-6.  The parties' cross-motions for summary judgment, based on the Administrative Record filed by the Commissioner, have been briefed.  ECF Nos. 8 (plaintiff's summary judgment motion), 10 (defendant's summary judgment motion).  Plaintiff has also filed a reply brief.  ECF No. 11.

## II.  FACTUAL BACKGROUND

Plaintiff was born on August 17, 1971, and accordingly was, at age 50, an individual closely approaching advanced age on the date of her SSI application.  AR 36, 253; see 20 C.F.R. § 404.1563(d).  Plaintiff has a seventh-grade education and can read and write simple messages in Spanish rather than English.  AR 245, 247.  She worked as a food truck cook from September to November 2020 and a cannery sorter from 2004 to 2006.  AR 247.  Reported conditions include stage three breast cancer, high blood pressure, begriming osteoporosis, and anemia.  AR 246.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[2] Two copies of the AR are electronically filed, collectively as ECF No. 7 (AR 1 to AR 2852).

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

SSI is available for every eligible individual who is "disabled."  42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity [RFC] make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

4

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since December 16, 2021, the application date.  (20 CFR 416.971 et seq.).
>
> 2. The claimant has the following severe impairments: osteoporosis of the knees, status post breast cancer currently in remission, depression and anxiety (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and/or carry, push or pull, up to 20 pounds occasionally, 10 pounds frequently. She can sit six hours in an eight-hour day, stand and walk six hours in an eight-hour day and requires an assistive device for long distance ambulation and/or ambulation on uneven surfaces. She can reach overhead occasionally. She can climb ramps and stairs occasionally. She can never climb ladders or scaffolds. She can balance, stoop, kneel, crouch and crawl occasionally. She can never work at unprotective heights. She is limited to simple tasks, to routine and repetitive tasks and to simple work-related decisions.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on August 17, 1971, and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has a limited education (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

    10. The claimant has not been under a disability, as defined in the Social Security Act, since December 16, 2021, the date the application was filed (20 CFR 416.920(g)).

AR 25-37.

  As noted, the ALJ concluded that plaintiff was "not disabled" under Title XVI of the Act. AR 37.

## VI. ANALYSIS

### A. The ALJ Did Not Err in Discounting Plaintiff's Subjective Testimony

#### 1. Overview

  Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to discredit her statements at the hearing regarding her pain and physical limitations. ECF No. 8 at 13-14. Plaintiff presents this issue last, and argues it in extremely cursory form, but the court addresses it first because it logically precedes her other arguments regarding the ALJ's formulation of the RFC.

#### 2. Plaintiff's Testimony Regarding Pain and Functioning

  Plaintiff testified as follows at the hearing.[3] Since May 2022, after being diagnosed with bilateral breast cancer, plaintiff has undergone a double mastectomy, chemotherapy, and radiation treatment. AR 52-53. Her treatment has caused osteoporosis and arthritis in both knees, along with swelling in both legs. AR 53, 61.

  Doctors attribute plaintiff's constant "puncture sensation" in each knee to her radiation treatment. AR 54-55. This pain increases whenever she sits down for more than an hour or lies down on her bed, including to sleep. AR 55. Aleve is the only medication her oncologist has approved as safe for plaintiff, but neither it nor physical therapy has helped. AR 55-57. Plaintiff has not attempted to treat the pain with injections directly into the knee. AR 57.

  Plaintiff needs a walker whenever not at home due to a "sensation of weakness" she feels every time her foot touches the ground. AR 54, 56. Her oncologist had prescribed it in November 2022 because one of her knees was "twisted", but she did not start using one until someone gave it to her at some point in 2023. AR 56, 65. Within her apartment, she only uses it

---

[3] See AR 51-63. Plaintiff testified through a Spanish language interpreter.

as leverage to stand up so she can go to the bathroom. AR 60. She does hold onto furniture and walls when moving around the apartment, however, and must elevate her legs for 20 minutes once or twice per day. AR 61.

As to her upper body, plaintiff's arms have a limited range of motion. AR 58. She cannot lift her arms over her head or shoulders, nor reach to either side or behind her. AR 58. She needs help getting dressed because she cannot lift her legs and feet, nor can she move her arms enough to put a blouse or dress on. AR 58. Plaintiff has some difficulty using her hands. AR 62.[4] She receives physical therapy for her hands and arms whenever she receives therapy for her knees. AR 63.

Plaintiff estimates she can stay seated for 1-2 hours, stand for no more than 10 minutes, and lift no more than 10 pounds. AR 57. Being able to stand for only 10 minutes at a time means she can only wash the dishes or sweep for that long before sitting down to take a break. AR 58. She also does some landscaping and cleans the yard, but once again can only do it for a limited time before she feels immense pain. AR 59. Plaintiff does not vacuum or do the laundry. AR 59. She prepares one or two meals a day, with her husband preparing the rest, but heat from cooking on the stove causes a puncturing sensation in her breasts. AR 58-59. These meals are small and usually take ten minutes before she gets tired and walks away from the stove. AR 62.

Plaintiff's daily routine also involves a limited degree of care for her grandchildren. AR 60. She wakes them up in the morning in time for school, but they then get ready entirely without her help. AR 60. Once they come home from school, weather permitting, she takes them to the yard and plays with them. AR 60. Plaintiff also teaches them how to pray while sitting beside them. AR 60.

Plaintiff reported going to church every three days plus Sundays, provided her husband has time to take her since she does not have a driver's license. AR 52, 59. Mass lasts for 60 to 90 minutes, during which she can use her walker to switch between sitting and standing, but she cannot lean (sic) when the priest says to do so. AR 61-62. Plaintiff goes shopping with her

---

[4] The transcript omits key words describing these issues, noting that plaintiff's testimony was inaudible.

7

husband for groceries twice per week and for other items up to twice per week. AR 59-60. Her other outings consist solely of taking her daughters to visit her sisters. AR 60.

The ALJ found that found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence on the record[.]" Accordingly, he found that her testimony did not support limitations more restrictive than those included in the RFC.

        3.   <u>Governing Law</u>

In the Ninth Circuit, evaluating a claimant's testimony as to pain is a two-step process. First, the claimant must provide "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir.1991))). The claimant need not, however, provide evidence that the impairment would result in the same degree of pain or other symptom as what the claimant alleges. <u>Garrison</u>, 759 F.3d at 1014.

Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's testimony about the severity of such symptoms unless there is "'specific, clear and convincing reasons for doing so.'" <u>Id.</u> at 1014-15 (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996)). The clear and convincing standard is "not an easy requirement to meet" and is in fact the most demanding standard in such cases. <u>Garrison</u>, 759 F.3d at 1015.

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989); <u>Smartt v. Kijakazi</u>, 53 F.4th 489, 499 (9th Cir. 2022).[5]

---

[5] In this regard, so long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002). Defendant argues that the clear and convincing standard in <u>Garrison</u> conflicts with this "substantial evidence" standard, as articulated in 42 U.S.C. § 405(g). ECF No. 10 at 4, n.3; 759 F.3d at 1015. Defendant conflates the evidentiary burden the ALJ must meet in its decision with the standard of review that courts must apply when analyzing such decisions.

Although an ALJ cannot reject complaints of pain solely due to "a lack of medical evidence to *fully corroborate* the alleged severity of pain[,]" it need not adopt such testimony when it contradicts "objective medical evidence in the record[.]" Id. at 498-99 (quoting Burch, 400 F.3d at 680). Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors, the Ninth Circuit has held that an ALJ can consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (quoting Fair, 885 F.2d at 603); see also Plummer v. Berryhill, Case No. 2:16-cv-00753-AC, 2017 U.S. Dist. LEXIS 108184 at *16-17, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony.").

    4.  <u>The ALJ Permissibly Discounted 's Plaintiff's Testimony</u>

The ALJ first notes that while plaintiff attributes her weakness to breast cancer treatment, she finished chemotherapy in March 2022. AR 31, 2589. She was noted as doing quite well twice in June 2022 and finished radiation therapy in August 2022. AR 31, 1542, 1746, 2589. In

9

September 2022, Dr. Fotouhi Ghiam reported that plaintiff was not suffering any side effects from the radiation. AR 31, 2510. Although post chemotherapy residual disease was detected in January 2023, it receded on May 11 after additional chemotherapy. AR 31, 2234, 2476. From May 2023 to the date of the decision, her cancer appeared to be in full remission. AR 31.

The ALJ then focused on the medical history regarding plaintiff's knees and upper extremities. Patient notes from October 2021 to May 2022 did not reflect any joint pain or swelling, muscle weakness or tenderness, abnormalities in gait, or limits in range of motion. AR 32 (citing AR 398, 402, 584, 632, 1103, 1300-08, 1554, 1771, 1777, 1780). Plaintiff reported back pain on June 9, 2022, but exhibited no motor or sensory deficits during either that visit or another visit later that month. AR 32, 1746, 1770. When Dr. Mohammed Eldaly asked her on August 16, 2022, she denied any arthritis, joint pain, or decrease in range of motion. AR 33, 2268-69.

In September 2022, plaintiff attended physical therapy both for pain in the right hand and thumb and for six years of bilateral knee pain. AR 33, 2630, 2657. Despite this, plaintiff continued to deny feeling back or muscle pain, motor or sensory deficits, arthritis, decreases in range of motion, or acute distress from September 2022 to March 2023. AR 33, 2170, 2234, 2278, 2319, 2510. Only on May 11, 2023, after completing chemotherapy, did plaintiff report difficulty lifting her arms and paresthesia in her feet. AR 33, 2476. While undergoing physical therapy in July 2023, she reported that she had difficulty lifting her arms and doing chores since the May 2022 surgery. AR 33. She also reported a limited range of motion in both her shoulder and knee, where the pain had purportedly increased due to chemotherapy. AR 33. On August 15, 2023, plaintiff complained of severe pain yet performed all exercises without grimacing or other signs of distress. AR 33, 2529.

The ALJ noted that plaintiff admitted to taking only over-the-counter medicine, not receiving injections, and not using the walker at home. AR 33. Testimony focused on the knee osteoporosis rather than breast cancer residual pain, yet recent reports of impaired gait contrasted with reports of normal gait through May 2023. AR 33-34. There were no imaging studies of her knees or shoulders, nor did her January 2022 Function Report mention the use of an assistive

1  device.  AR 33 (citing AR 256-63).  She also denied doing chores and preparing meals in the
2  Function Report, yet testified to doing both along with shopping and spending time with family.
3  AR 33, 258.  She conversely testified to not being able to dress himself, despite telling a
4  consultative psychologist that she could.  AR 33 (citing AR 1103-10).

5  These inconsistencies between plaintiff's testimony and the evidence of record provide a
6  permissible basis for the ALJ's conclusion that plaintiff's statements about the intensity,
7  persistence and limiting effects of her symptoms were not entitled to full credit.  Accordingly, the
8  RFC is not defective for failing to reflect the limitations to which plaintiff testified.

9     B.  The ALJ Did Not Fail to Develop the Record

10  Plaintiff contends that the ALJ violated his duty to fully and fairly develop the record to
11  assure the claimant's interests are considered.  ECF No. 8 at 6.  Specifically, she disputes the
12  ALJ's finding that the record has "no imaging studies of her knees or shoulders", id. (citing AR
13  33), relying on imaging results from March 26, 2024, a month after the ALJ's decision, which
14  found osteophytic spurring and various joint space narrowings.  ECF No. 8 at 6; AR 45.
15  Defendant questions whether post-decision evidence is relevant to this action, given that the ALJ
16  could not reasonably have considered it.  ECF No. 10 at 12.  Plaintiff responds that the evidence
17  is still relevant because it was submitted to the Commissioner prior to the Appeals Council's
18  decision.  ECF No. 11 at 5; AR 1-2.

19  The duty to fully develop the record is only triggered "when there is ambiguous evidence
20  or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v.
21  Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).  That was not the case here.  The absence of
22  imaging studies at the time of the ALJ's decision did not create any ambiguity or render the
23  record inadequate for proper evaluation of the evidence.  Rather, it constituted a straightforward
24  failure of the claimant to meet her burden of establishing…  Evidence postdating the decision
25  does not demonstrate that the record was previously inadequate.  The duty to develop the record
26  simply does not apply in this situation, where plaintiff essentially seeks relief on the basis of
27  evidence that was not before the ALJ.

28  A court may remand a matter with orders to take new evidence, but only if "there is new

11

evidence which is material and …good cause for the failure to incorporate such evidence into the record in a prior proceeding". 42 U.S.C. § 405(g). Evidence is material if it bears "directly and substantially on the matter in dispute" and there is a "'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." Mayes, 276 F.3d at 462 (quoting Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982); Booz v. Secretary of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1983)). In Mayes, a diagnosis of a herniated disc five months after the June 1997 decision was considered immaterial to whether the claimant was disabled as of June 1997. Mayes, 276 F.3d at 458. The Ninth Circuit noted that the record lacked evidence that the plaintiff had herniated discs "at and before the ALJ Hearing." Id. at 462. Even with a statement that she was suffering from degeneration in the same vertebral disc in 1994, the "condition diagnosed in 1997 may or may not be the same as or related to" the prior degeneration. Id. As for good cause, "obtaining a more favorable report once…[a] claim has been denied" is insufficient without "good cause for not having sought the expert's opinion earlier." Id. at 463 (citations omitted).

The Appeals Council applied this standard when denying plaintiff's appeal of the ALJ decision. Plaintiff does not explain why the Appeals Council was wrong to conclude that the imaging report "does not show a reasonable probability that it would change the outcome of the decision." AR 2. Nor does plaintiff address why she could not obtain such imaging results before the decision, as opposed to one month after. The court finds no error.

C. The ALJ Did Not Otherwise Err in Formulating the RFC

    1. Combination of Impairments

Plaintiff argues that the RFC does not properly account for the totality of three different physical limitations addressed in her own testimony and in the medical record. ECF No. 8 at 8-9. As to her right hand, records from August 2022 purportedly reflect inflation in the first dorsal compartment along with general "right hand and thumb pain". Id. at 8 (citing AR 2696, 2800, 2808). As to her lower body, plaintiff argues that Dr. Eldaly directed her to use a walker because of the pain and her inability to feel her feet. ECF No. 8 at 8 (citing AR 2476). Finally, Dr. Eldaly wrote in September 2022 that he observed fatigue, motor weakness, and sensory neuropathy due

to the chemotherapy. ECF No. 8 at 9 (citing AR 2173).[6]

As for the use of the walker, Dr. Eldaly did not prescribe one for plaintiff as she alleges. The cited page shows that when plaintiff arrived at a May 11, 2023 appointment, Dr. Eldaly simply noted that she was using a walker due to alleged paresthesia in her feet. AR 2476. This does not mean Dr. Eldaly previously told her that she should do so, nor did the treatment plan for that visit discuss future use of the walker. See ECF No. 10 at 10; AR 2476-78. In any case, the RFC already prohibits ambulation on long or uneven paths without an assistive device. AR 30.

As for plaintiff's hands, she was referred to physical therapy in August 2022 in part due to pain in her right hand and thumb. AR 2696-97, 2808. A positive Finkelstein test had also suggested inflammation in an extensor dorsal compartment. AR 2808. The evidence does not suggest, however, that this pain remained significant and debilitating. Just eleven days later, her physical therapist noted that plaintiff was able to perform all assigned exercises during the therapy session, albeit with a few breaks. ECF No. 10 at 10; AR 2800-01. The cited record is insufficient to show that plaintiff continues to suffer limitations in her right hand.

As to the fatigue, sensory neuropathy, and motor weakness that Dr. Eldaly observed on September 21, 2022, defendant notes that he only rated them all as "grade 1". ECF No. 10 at 10; AR 2174. To what extent that this neuropathy reflects long-term debilitation is unclear, particularly when Dr. Eldaly noted no musculoskeletal issues or abnormalities with gait and range of motion upon physical examination. AR 2174. As the decision notes, plaintiff denied feeling any fatigue or neuropathy over the next six months. AR 33, 2234-35, 2278-79, 2319, 2510-11.

Plaintiff argues in reply that the ALJ and Commissioner's citations to normal findings in the 2,852-page record to discredit her testimony constitute impermissible cherry picking. ECF No. 11 at 5, 7. An allegation of cherry-picking, however, sometimes "cuts both ways" because an administrative record will often include evidence that supports both sides. White v. Comm'r Soc. Sec., 572 F.3d 272, 285 (6th Cir. 2009). As the party seeking reversal and remand of an

---

[6] Plaintiff also cites AR 2400 for the assertion that Dr. Eldaly limited her to only two hours of standing due to this neuropathy. ECF No. 8 at 9. The cited report from March 23, 2023 includes no such limitation. AR 2400-02.

13

administrative decision, Plaintiff has the burden of demonstrating the ALJ made a harmful error. See Molina, 674 F.3d at 1111. This implies a duty "to provide an explanation, say, by marshaling the facts and evidence showing" that reversal is appropriate. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Citing to one or two medical records per purported issue, none of which are persuasive either individually or in light of the larger medical history, does not meet this standard.

The court finds that the ALJ did not err in his evaluation of the combined effects of plaintiff's upper body limitations, lower body limitations, and motor weakness and sensory neuropathy.

### 2. The ALJ Adequately Considered Dr. Eldaly's Functional Report

Elsewhere in her motion plaintiff also cites a functional report that Dr. Eldaly completed on November 15, 2022, asserting impairment in her knee due to chemotherapy. ECF No. 8 at 14 (citing AR 1928). Specifically, the report noted constant chemotherapy-related pain in both her knees and back. AR 1927. Dr. Eldaly limited all lifting and carrying to less than ten pounds at a time and any sitting and being on her feet to less than two hours each per workday, with the freedom to change between sitting and standing at will. AR 1927-28. Dr. Eldaly also admonished that plaintiff may need to lie down at unpredictable moments during a work shift, averaging at 15-minute intervals. AR 1928. She purportedly could never twist, stoop, crouch, climb stairs and ladders, kneel, crawl, or balance. AR 1928-29. Dr. Eldaly estimated that plaintiff would even miss upwards of four days of work per month. AR 1929. He asserted these were all known side effects of chemotherapy. AR 1928.

The ALJ reviewed this report as an expert medical opinion. The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Because supportability and consistency are the

most important factors, the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

> Supportability and consistency are defined in the regulations as follows:
>
>> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>>
>> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ discussed both factors when finding the functional report unpersuasive. AR 35. As to consistency, Dr. Eldaly himself noted a month after the report that plaintiff denied arthritis, motor weakness, sensory neuropathy, and any decrease in her range of motion. AR 35, 2278-79. As to supportability, the ALJ noted that Dr. Eldaly's only explanation for the observed impairments was ongoing chemotherapy. AR 35, 1928. This does not establish that these limitations persisted after plaintiff finished chemotherapy on May 11, 2023. AR 31, 35, 2476.

Plaintiff does not substantially challenge either of these findings, and identifies no evidence that the effects of her chemotherapy were permanent. Courts in the Ninth Circuit will only review "issues which are argued specifically and distinctly in a party's opening brief." Villa v. Commissioner of Social Security, Case No. 1:21-cv-00507-SAB, 2022 U.S. Dist. LEXIS 185602 at *9 n.7, 2022 WL 6764365 at *4 n.7 (E.D. Cal. Oct. 11, 2022) (quoting Indep. Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003)). Plaintiff has failed to articulate why this functional report should have resulted in a different RFC.

### D. The ALJ Did Not Err in Relying on the VE Opinion

#### 1. Role of the Vocational Expert

In determining whether a claimant can do past relevant work based on the current RFC, the Commissioner may both ask the claimant about his past work and use a vocational expert to provide necessary evidence. 20 C.F.R. §404.1560(b)(2). The vocational expert "may offer

relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." Id. If a vocational expert's hypothetical does not reflect all the claimant's limitations, however, then the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (citing DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)).

### 2. VE Report and ALJ's Findings

Because the VE did not appear at the hearing, the ALJ subsequently sent the VE interrogatories asking them to consider a hypothetical individual of plaintiff's age and RFC. AR 30, 343. The VE responded that such an individual could work as either an Electrical Accessories Associate, an Office Helper, or a Small Products Assembler. AR 344. The VE estimated that these occupations account for a total of 37,800 jobs nationwide. AR 344. The ALJ concluded that plaintiff was not disabled because the VE's response suggested she could "make a successful adjustment to other work that exists in significant numbers in the national economy". AR 37.

### 3. The Hypothetical Submitted to the VE was Valid

Plaintiff argues that the hypothetical presented to the VE did not address the fact that she needs a walker even when on even terrain, or that she cannot lift her arms or use her hands. ECF No. 8 at 10-11. If these limitations apply, the ALJ's failure to incorporate them into the hypothetical individual presented to the VE would render the VE's opinion inadmissible. However, the court's conclusions above defeat this argument.

When constructing an RFC based on a plaintiff's testimony and medical opinions, an ALJ is not required to incorporate evidence from sources whose opinion the ALJ has properly discounted. See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1197 (9th Cir. 2004). When reviewing the ALJ's determination as to the RFC, the court will uphold the determination if in accordance with the proper legal standard and supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. See Morgan v.

Comm'r of Soc. Sec., 169 F.3d 595, 599 (9th Cir. 1999) (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)).

As discussed above, the ALJ permissibly rejected plaintiff's testimony as to her alleged limitations and did not incorporate them into the RFC. See supra VI.A. The ALJ therefore did not need to present these limitations to the VE. Not doing so does not invalidate the VE's opinion.

4. The VE's Response Adequately Addressed Plaintiff's Ability to Find Work

Plaintiff argues that the VE's testimony nevertheless fails to establish her ability to work because it does not establish that she can perform "substantially all" of the jobs that fall under the category of "light work". ECF No. 8 at 11-12. She essentially argues that to prove she can perform "substantially all" light work, defined in Social Security Ruling ("SSR") 83-9 as at least 85% of such work, the ALJ needed to show that the plaintiff's additional limitations did not account for more than 15% of such work. See ECF No. 8 at 13.

Plaintiff again cites limitations from her subjective testimony that the ALJ rightfully rejected. More fundamentally, she bases this argument on the assumption that an ALJ must both apply the rules in Appendix 2 to 20 C.F.R. Part 404, colloquially known as the "grid rules," and separately establish that plaintiff can perform a significant number of jobs given her RFC. ECF No. 8 at 11. This argument conflates two different methods by which an ALJ can fulfill its burden in step five of the analysis.

The grid rules "reflect the analysis of the various vocational factors…in combination with the individual's [RFC]…in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work." 20 C.F.R. Part 404, Subpt. P., App. 2 § 200.00(a). If the findings of fact as to the combination of vocational factors and RFC coincide with all criteria of a particular rule, the ALJ must follow the rule's "conclusion as to whether the individual is…disabled[.]" Id.; Cooper v. Sullivan, 880 F.2d 1152, 1157-58 (9th Cir. 1989). Accordingly, the ALJ first found that under Rule 202.10, he would have to find plaintiff "not disabled" if she could perform the full range of light work. AR 36.

If an ALJ's findings of fact do not completely coincide with a particular rule, however,

"full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations." 20 C.F.R. Part 404, Subpt. P., App. 2 § 200.00(a). There is no dispute here that plaintiff's RFC did not meet the rule's exact requirements. AR 36. She was only capable of light work that also complied with the nonexertional limitations of her RFC, such as her limitation to only simple, routine, and repetitive tasks. AR 30, 36. When a plaintiff's RFC includes exertional and nonexertional limitations, "the grids are only a framework and a VE must be consulted." Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d at 1340 (9th Cir. 1988); Cooper v. Sullivan, 880 F.2d 1152, 1155–56 (9th Cir. 1989)).

The Ninth Circuit held in Moore v. Apfel that if the VE then identifies jobs that a person with plaintiff's age and RFC can perform, the testimony is "substantial evidence" that "rationally supports" an ALJ's decision to rely on the VE's testimony and find the plaintiff "not disabled." 216 F.3d 864, 870, 871 (9th Cir. 2000). Similarly, district courts have distinguished between "a determination regarding the types of other work that the claimant could perform made under the specific language of a particular 'grid rule'" and "testimony about other work by a vocational expert." Jones v. Astrue, No. 2:09–cv–03214 KJN, 2011 U.S. Dist. LEXIS 35401 at *30, 2011 WL 1253727 at *9 (E.D. Cal. Mar. 30, 2011). Once the ALJ determined here that plaintiff could not perform the full range of light work under the applicable grid rule, step five proceeded "under a different and distinguishable analytical framework." 2011 U.S. Dist. LEXIS 35401 at *30-31, 2011 WL 1253727 at *9. The question was no longer whether plaintiff could perform "substantially all" light work, or whether her RFC strictly matched any of the grid rules. The only question was whether, based on the VE's testimony, she could perform work that currently exists in substantial numbers nationwide. The ALJ reasonably concluded that she could.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 8) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 10) is GRANTED;

18

3. The Commissioner's final decision in this matter is AFFIRMED; and

4. The Clerk of the Court shall enter judgment for the plaintiff and close this case.

DATED: October 9, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE